UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MIRSADA BAJRAMOVIC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   No. 4:22-cv-1221-MTS |
| MARTIN O'MALLEY,[1] | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Commissioner of the Social Security Administration, denying the application of Mirsada Bajramovic ("Plaintiff") for Disability Insurance Benefits ("DIB").[2] In December 2019, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). (Tr. 161). Plaintiff alleges disability due to anxiety, depression, post-traumatic stress disorder, cholesterol, and high blood pressure with an alleged onset date of April 1, 2018. (Tr. 272). In October 2021, following a hearing, an Administrative Law Judge ("ALJ") issued her decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 176). For the following reasons, the Court affirms.

I. **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically

---

[1] Martin O'Malley is now the Commissioner of SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, O'Malley is substituted as the proper defendant.
[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 176), the Appeals Council denied Plaintiff's request for review, (Tr. 1); thus, the ALJ's decision stands as the Commissioner's final decision.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* § 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.   <u>The ALJ's Decision</u>

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the

alleged period of disability.  (Tr. 163).  At Step 2, the ALJ found Plaintiff had severe impairments of post-traumatic stress disorder, major depressive disorder, insomnia, coronary artery disease, degenerative joint disease of the left wrist and elbow, bilateral carpal tunnel syndrome, degenerative disc disease, and obesity.  (Tr. 163).

At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 164).  Thus, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567, with postural, environmental, and physical limitations.  (Tr. 167).  Plaintiff can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds, and can never balance.  (Tr. 167).  She can frequently reach in all directions with her left upper extremity and can frequently handle and finger bilaterally.  (Tr. 167).  She cannot be exposed to unprotected heights or any hazardous machinery, and she can occasionally be exposed to extreme temperatures or vibration.  (Tr. 167).  The claimant is limited to simple, routine, repetitive tasks but has sufficient concentration to persist in the performance of such tasks at an acceptable rate with standard breaks, few changes in the work setting, simple work-related judgments, and only occasional interactions with supervisors, co-workers, and the general public.  (Tr. 167).

At Step 4, the ALJ found Plaintiff could not return to her past relevant work as a machine packager.  (Tr. 174).  At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff can perform, despite her nonexertional limitations, such as housekeeping cleaner, cafeteria worker, and as a small parts assembler.  (Tr. 175).  Consequently, the ALJ concluded Plaintiff is not disabled under the Act.  (Tr. 176).

4

**III.     Discussion**

The specific issues in this case are (1) whether the ALJ properly evaluated medical evidence; (2) whether the ALJ properly considered Plaintiff's subjective complaints; and (3) whether the RFC is supported by substantial evidence.

1. *The ALJ Properly Evaluated Medical Evidence*

Plaintiff argues the ALJ did not analyze the medical opinions correctly under 20 C.F.R. § 404.1520.  ALJs must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)).  The first two factors, supportability and consistency, are the most important factors and the "ALJ must explain how he or she considered these factors in the decision." *Pauley v. Kijakazi*, 4:23-cv-47-SRW, 2024 WL 95133, at *11 (E.D. Mo. Jan. 9, 2024) (citing 20 C.F.R. § 404.1520c(b)(2)).  The supportability factor states "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(2).

Here, the ALJ adequately discussed the supportability and consistency factors when evaluating the persuasiveness of several medical opinions.  First, the ALJ ruled that the opinions of Dr. Gwartney and Dr. McGraw—that Plaintiff could perform a reduced range of medium

5

exertional work with some postural and environmental limitations—were not fully persuasive. (Tr. 173).  In making this determination, the ALJ found that, contrary to the opinions of Gwartney and McGraw, "[t]he record as a whole reasonably supports a conclusion that the claimant is limited to performing a range of light exertional work, with the non-exertional limitations articulated above." (Tr. 173).  The ALJ addressed supportability finding that Gwartney and McGraw provided *support* in the form of detailed narrative comments and specific citations to the record.  *See Samuel G. v. Kijakazi*, 4:21-cv-1375-JMB, 2023 WL 2496879, at *7 (E.D. Mo. Mar. 14, 2023) ("In articulating how [the ALJ] considered the supportability factor, an ALJ may properly consider . . . that the physician did or did not provide a detailed explanation for the opinion."); *see also Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (explaining that an ALJ's reasoning must only be "clear enough to allow for appropriate judicial review" and "brevity is not reversible error"). Consistency was then addressed by the ALJ when she stated that, unlike the finding that Plaintiff was restricted to a reduced range of medium exertional work, the record as a whole supports a range of light exertional work and that further restrictions are not warranted because the claimant has not exhibited significant musculoskeletal deficits or abnormalities.  (Tr. 173).

The same is true for the ALJ's evaluations of Dr. Isenberg and Dr. Bucklew.  The ALJ found the opinions of Dr. Isenberg and Dr. Bucklew—that the claimant should avoid working directly with the general public—only partially persuasive since "they failed to correlate [their] narrative comments with any specific functional limitations [and] the functional limitations they assessed the claimant to have [were] stated only vaguely at best."  (Tr. 173).  This statement satisfies the supportability factor.  *See Samuel G.*, 2023 WL 2496879, at *7.  Furthermore, earlier in the opinion, the ALJ found that Dr. Isenberg and Dr. Bucklew's conclusion—that the claimant had a moderate limitation in interacting with others—was consistent with the rest of the administrative record.  (Tr. 166).

6

Finally, the ALJ discounted the opinions of Dr. Sheheryar and Ms. Cheong since their comments were not detailed, and the Plaintiff's mental status examinations were largely within normal limits from November 2020 to June 2021. (Tr. 173). The ALJ emphasized how the Plaintiff was observed "to exhibit a cooperative attitude, good eye contact, normal speech, logical and goal directed thought processes, an average fund of knowledge, good insight and judgment, and no overt abnormalities of cognition." (Tr. 174). The ALJ properly articulated the supportability factor by highlighting how the comments left by Dr. Sheheryar were both vague at best and consisted of largely checkboxes. *See Samuel G.*, 2023 WL 2496879, at *7 (explaining that "opting for a checkbox form" is "unpersuasive"). Similarly, for Ms. Cheong, the ALJ noted that little narrative support was provided. *See id.* To satisfy the consistency factor, as mentioned, the ALJ found that Dr. Sheheryar's findings were inconsistent with Plaintiff's mental status examinations, which were largely found to be within normal limits. (Tr. 173). The ALJ also cited specific parts of the record—including that the claimant has often been observed to exhibit normal speech and logical thought processes—and found Ms. Cheong's opinion—that the claimant had marked functional limitations—not reasonably consistent with the record. (Tr. 174). Thus, the ALJ adequately articulated the supportability and consistency factors for these medical opinions.

    2. ***The ALJ Properly Evaluated Plaintiff's Subjective Complaints***

Next, Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective complaints. The "ALJ considers the credibility of a Plaintiff's testimony when determining the Plaintiff's [RFC]." *Kribble v. Kijakazi*, 663 F. Supp. 3d 1016, 1026 (E.D. Mo. 2023). When evaluating the Plaintiff's subjective complaints, the ALJ must consider "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the

7

claimant's complaints." *Gould v. Kijakazi*, 4:21-cv-00179-NCC, 2022 WL 4289506, at *8 (E.D. Mo. Sept. 16, 2022) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)); *see also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is not required to discuss each factor as long as they acknowledge and consider each factor before deciding to discount a Plaintiff's subjective testimony.  *See Grindley*, 9 F.4th 622, 630 (8th Cir. 2021).  Additionally, "[a]nother factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id.* (quoting *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010)).  Credibility determinations of the Plaintiff are at the discretion of the ALJ and the "Court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'" *Kribble*, 663 F. Supp. 3d at 1026 (quoting *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018)).

The ALJ properly considered Plaintiff's subjective testimony.  The ALJ considered Plaintiff's work history; specifically, the ALJ referenced two particular positions where, first, the employer moved locations, in addition to a subsequent position where she was fired as a result of missed time for surgery.  (Tr. 169).  The ALJ also determined that the Plaintiff's claims about the intensity, persistence, and effects of the Plaintiff's medical conditions were not entirely consistent with evidence in the record.  As an example, the ALJ discounted Plaintiff's complaints regarding her carpal tunnel issues because she had a left-sided release surgery, showed no deficits in grip strength or hand or finger dexterity, and also had a full range of motion in her bilateral upper and lower extremities.  (Tr. 170-71).  In making these decisions, the ALJ appropriately considered all the available medical evidence including how the Plaintiff has been observed "to exhibit a cooperative attitude, good eye contact, normal speech, logical and goal directed thought processes, an average fund of knowledge, good insight and judgment, and no overt abnormalities of

cognition." (Tr. 174). Furthermore, the ALJ emphasized that the Plaintiff's testimony of her physical impairments is not consistent with the record considering she has continuously exhibited normal musculoskeletal and neurological findings. (Tr. 168).

Additionally, the ALJ properly discredited Plaintiff's subjective complaints regarding her mood. In examining Plaintiff's complaints of depression causing disability, the ALJ considered the frequency of her complaints by examining the record from 2018 to 2021. The Eighth Circuit has previously stated that "doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity," *see Hutsell*, 259 F.3d at 712; however, the ALJ, after reviewing the longitudinal record, determined that her mental status was "not reasonably consistent" with the record. (Tr. 168). The ALJ discounted Plaintiff's complaints because Plaintiff, in 2019, found her mood aggravated when she stopped taking medication, but later, Plaintiff was noted to be in a good mood despite an absence of medication for the same period. (Tr. 171-72). When actually taking the medications, Plaintiff noted that she was in a good mood and that the medication has helped a lot with her depression, anxiety, and post-traumatic stress disorder and has been beneficial. (Tr. 171-72, 639, 656); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief . . . may diminish the credibility of a claimant's complaints." (citing *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999))). What is more, the ALJ noted that Plaintiff has only sought outpatient mental health treatment, and the course of treatment has been conservative in nature. (Tr. 172). The ALJ accommodated Plaintiff's subjective limitations in their RFC determination limiting Plaintiff's physical capabilities and stating the Plaintiff would need to perform simple tasks with only occasional interactions with others. (Tr. 167).

Ultimately, this Court defers to the ALJ's credibility determination if it supported by good reasons and substantial evidence because the ALJ is in the best position to determine credibility.

9

*See Bryant v. Colvin*, 861 F.3d 779, 782-83 (8th Cir. 2017); *see also Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Here, the Court finds no reason to reverse the ALJ's decision. *McNamara*, 590 F.3d at 610 (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse" "even if [the court] may have reached a different outcome").

### 3. *The ALJ's RFC Finding is Supported by Substantial Evidence*

Finally, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. The Plaintiff's RFC "is 'the most' that the claimant can do in a work setting despite her limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting 20 C.F.R. § 404.1545(a)(1)). The ALJ must "determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [their] limitations." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). Since the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace . . . . [n]evertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox*, 495 F.3d at 619 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Additionally, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Lund v. Kijakazi*, 4:20-cv-449-AGF, 2021 WL 4133759, at *5 (E.D. Mo. Sept. 10, 2021) (quoting *Hensley*, 829 F.3 at 932). This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt*, 27 F.4th at 1360).

The ALJ's RFC determination is supported by substantial evidence. In determining the Plaintiff's RFC, the ALJ properly considered all medical evidence. For example, the ALJ examined how the Plaintiff has exhibited largely normal physical examinations, which supports

the finding that the Plaintiff would be able to stoop, kneel, crouch, or crawl. (Tr. 168). More specifically, the Plaintiff was able to walk on her heels and toes without difficulty, hop on each foot, squat, have full grip strength bilaterally, and she demonstrated intact hand and finger dexterity, which supports the physical determination of the RFC. (Tr. 170, 617). Furthermore, the Plaintiff was repeatedly assessed to have good judgment and normal behavior during her mental health examinations. (Tr. 168-70, 642, 658, 823, 842). In addition, Plaintiff often presented a cooperative attitude and good eye contact, with the Plaintiff even describing her mood as good at times and that the prescribed medication stabilized her mood. (Tr. 168-172). The ALJ also considered Plaintiff's overweight to mildly obese body habitus to determine Plaintiff's RFC. (Tr. 172). Thus, the record on a whole provides substantial evidence to support the ALJ's RFC finding. *Austin*, 52 F.4th at 730.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 29th day of March 2024.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE